# WHEELING

## STATE *v.* PETROLEUM CO.

### Submitted June 27, 1905. Decided June 27, 1905.

1. STATUTORY ATTORNEY TO ACCEPT SERVICE OF PROCESS—*Corporations.*

   That provision of chapter 39, acts 1905, requiring the corporations specified to appoint the auditor as attorney to accept service of process and notice, is not unconstitutional. (p. 109.)

Original Jurisdiction.

Petition by State of West Virginia against St. Mary's Franco-American Petroleum Company.

*Writ of Mandamus Awarded.*

CLARKE W. MAY, Attorney General, FRANK LIVELY, FRANK W. NESBITT and BROWN, JACKSON & KNIGHT, for petitioner.

L. E. McWHORTER, CHILTON, MACCORKLE & CHILTON, for respondents.

BRANNON, PRESIDENT:

By chapter 39, Acts 1905, the state auditor was constituted the attorney in fact for every foreign corporation doing business in this State, and for every non-resident domestic corporation, and every such corporation is required, by power of attorney duly executed by it, to appoint the auditor its

attorney in fact to accept service of process and notice in this State for it, and by the same instrument to declare its consent that service of any process or notice in this State on said attorney, or his accepting shall be equivalent to and shall be, due and legal service upon the corporation. The act requires the corporation to pay yearly ten dollars to the auditor for acting, to be turned into the treasury by him. The defendant refusing to execute such power of attorney, the State asks a *mandamus* to compel it to do so. The corporation asserts that no duty rests upon it by reason of said act, because it is unconstitutional. The corporation says that the act denies it freedom of contract, freedom of choice of its agent, compels it to pay money, deprives it of property without due process of law, contrary to both the the State and Federal Constitutions. We cannot concede this. We shall not discuss the general power of a state over corporations taking charters under it, or foreign corporations coming to the state by its grace to do business in it. It might be plausibly said that a foreign corporation, or a non-resident domestic corporation, having no office or officers in the state, the state, under power to regulate corporations, and particularly to see to it that judicial process to answer suits by proper means be made available, has the power assumed in the statute. It is a duty, and must be a legitimate power, that the state render effective the jurisdiction of its courts against corporations accepting its charter and doing business in the State, or chartered by another state and doing business in the state, but having, perhaps, no officer to be readily found in the State. We can see how often the service of process, without which court procedure would be ineffectual and not due process, may be delayed, or be inconvenient, or be frustrated; and we can see how the State must have wide power in such case to secure service of the process of its courts, so its legislation do not deprive the just right of the corporation. It ought to answer suitors in the courts. If the State deprives the corporation of an essential right, its action would not be held good; but what right does this act take away? If the auditor were clothed with discretion to do an act harmful to the corporation, complaint might be justly made; but the auditor does nothing but accept service, a mere ministerial act. He does

not confess judgment, nor does he do any discretionary act. Doubtless, if he fail to warn his corporation of the suit, he would be liable on his bond, just as to any person for failure to perform a legal duty. Before the act of 1905, the Code required a corporation to appoint such attorney. This act changes this so far as to make the auditor such attorney, thus taking from it the choice of person, sometimes a valuable right, but in this instance not so. But whether but for section 8, chapter 53, Code, this act would be valid, we need not, do not say. That section reads thus: "Where the legislature has the right to alter or repeal the charter or certificate of inrorporation heretofore granted to any joint stock company, or to alter or repeal any law relating to such companynothing contained in this chapter shall be construed to surrender or impair such right. And the right is hereby reserved to the legislature to alter any charter or certificate of incorporation hereafter granted to a joint stock company, and to alter or repeal any law applicable to such company." When the defendant obtained its charter that section was in force, and this charter is subject to it. Under such a reservation of right, either to amend a charter, or to change the law regulating it, there is no limit to legislative power. It even includes right of repeal. In this instance the State has simply amended the law as to the appointment of an agent; has only made a public officer, attorney, so that there be one particular person, at a fixed place, always to be found, and known to all to be the attorney, dispensing with the inconvenience and uncertainty of ascertaining persons for service. 7 Am. & Eng. Ecy, L. (2d ed), 671; *Citizens Bank* v. *Owensboro*, 173 U. S. 636, and other cases cited in Brannon's 14th Amendment, 365. When a charter issues under such law, the State has this right of amendment of the law in force before the charter; it is a condition of the charter as fully as if that right were in words in the charter. The law inserts or reads it into the charter. 10 Cyc. 1087; *Cross* v. *Railroad*, 35 W. Va. p. 177. If the corporation do not see proper to conform to it, it must discontinue business, as the legislature can not force it to do business under the change. *Yeaton* v. *Bank*, 21 Grat. 593. It cannot be said that the 14th amendment is violated because the act discriminates, requiring certain corporations, and not others, to appoint the auditor. As to do

mestic corporations having offices and officers in the State, on whom service of process can be had there is not need of such a statute; but as to those not so situated, there is need. The classification is based on the reason of their being differently circumstanced, and this justifies such discriminating classification. *Copper Co.* v. *Scherr*, 50 W. Va. 533; *McGoun* v. *Illinois*, 170 U. S. 283. As to the exaction of ten dollars for the service of the auditor. If his appointment is valid, this feature cannot render the statute invalid as taking property without due process. The auditor is paid by the State, and the State by its officer, renders valuable service to the corporation. South Carolina instituted a commission for regulation of railroads, and required the company to pay salaries of its members, on the theory that the State had power of regulation and the service redounded to the benefit of the railroad company. The act was held not to violate the 14th amendment either as taking property without due process of law, or as denying the company the equal protection of the law. *Charlotte Co.* v. *Gibbes*, 142 U. S. 386. To the same effect *People* v. *Budd*, 145 U. S. 175. That feature of the act providing that the corporation shall not be required to pay any fee to any one who may have been before appointed such attorney, was mentioned in oral argument as violating the Constitution in impairing the obligation of a contract. That does not arise in this case. It is a matter between different persons. Further, that is a provision separable from the clause requiring the corporation to appoint the auditor, and if unconstitutional, would not touch or infect that provision. 26 Am. & Eng. Enc. L., 2d ed., 570.

*Writ Awarded.*

Sanders, Judge, (*dissenting*):

I cannot concur in holding that chapter 39, Acts 1905, wherein it requires non-resident domestic corporations to appoint the auditor attorney in fact to accept service of process and notice, is constitutional. The defendant here was organized and now exists by virtue of a charter issued to it by the Secretary of State on the 18th day of January, 1902, and, on the 17th day of February, 1902, by power of attorney, duly executed, filed and recorded, as provided by section 24, chapter 54 of the Code, it appointed Wm.

M. O. Dawson, a resident of the county of Kanawha, in this
State, its attorney in fact to accept service of process and
notice in its behalf, and as a person upon whom service might
be had.  There is no complaint that the defendant did not
fully comply with the statute as it existed prior to the passage
of chapter 39, Acts 1905, but it is the provisions of this act it is
alleged to have violated, and application is made to this Court
for a writ of *mandamus* to enforce compliance therewith.
The defendant contests the right of the State to compel it to
comply with the provisions of chapter 39, and urges as the
reason why it should not be compelled to do so, that it is in
violation of both the Federal and State Constitutions, in this,
that it deprives it of the liberty to contract and select its own
attorneys and agents, and that it is calculated to deprive and
may deprive corporations of their property without due pro-
cess of law.

The law, prior to the passage of this act, was entirely ade-
quate to make process available against foreign and non-
resident domestic corporations, and completely protected
suitors against such corporations, by providing for the ap-
pointment of an attorney in fact to accept service of process,
etc., and by requiring the power of attorney by which the
appointment was made to be recorded; and just what called
for the passage of chapter 39 is difficult to determine, unless
it was for the purpose of increasing the State's revenues.  It
does not afford any additional or more efficacious means of
serving process, than existed prior to its enactment.
Therefore, the act under consideration could be declared un-
constitutional without, in the least, impairing the rights of
any person who may desire to resort to the courts of this
State for the enforcement of his rights against such cor-
poration.

The selection, by a corporation, of its officers und agents,
for the purpose of managing and conducting its business, of
all kinds whatsoever, is the highest and most important right
which can be exercised by it, because its business is conducted
solely by its officers and agents, and under the provisions of
the act in question the defendant is deprived of this para-
mount right, and instead thereof, the State has imposed upon
it the duty of selecting the State auditor as such agent.  The
right to have notice of suit brought against it is an exceed-

ingly important right—so important that it should have the right of selecting its own agents for this purpose. It should be left to the corporation to determine whether or not the agent is competent to transact the business, and one in whom it would repose so important a trust, and to deny it this right is to clearly invade that constitutional provision that no person shall be deprived of life, liberty or property without due process of law. When the State selects one of its officers and compels his appointment as attorney in fact for the corporation, any judgment obtained against such corporation under a service upon such agent, is not a judgment obtained by due process of law.

JUDGE BRANNON, in delivering the opinion of the Court, says: "If the State deprive the corporation of an essential right, its action would not be held good." In determining the rights of a corporation, I fail to see what right or power is more essential to the successful management and safety of its business than the selection of its agents and servants, and especially in the selection of an agent to accept service of process for it, or upon whom service of process may be had in any suit which may be filed against it. A failure to notify a corporation of a suit pending against it, may mean absolute destruction to the corporation, without remedy. If the act in question is constitutional, and the State has the power to select an agent to accept service of process, then where does such power end? Would it not have the power to select any other officer or agent of the company? If the corporation can be deprived of the agent of its own choosing in one instance, why cannot the State deprive it of the selection of all its agents? There is as much reason to say that the State can appoint all as to say it can appoint one. There is no public necessity for the appointment of an agent to receive service of process, until after the right of selection has first been given to the corporation, and it fails or refuses to exercise it.

What remedy is given the corporation where the auditor fails to notify it of any suit brought against it? JUDGE BRANNON says: "Doubtless if the auditor fails to warn the corporation of the suit, he would be liable on his official bond." I know of no law that fixes any such liability on the auditor. The act in question does not do so. While it is

true he is a State official, yet he is not a State official when acting as attorney in fact for the corporation. The corporation is required to appoint him as *its* agent, and in this respect he is not the agent of the State nor acting for the State. But suppose he could be held liable on his bond; the penalty of it as fixed by statute is twenty thousand dollars. Is this adequate to meet any such liabilities as may arise by reason of his failure to perform his duties in this respect? In what way can it be determined? The statute does not contemplate that the auditor's bond is taken to cover any such liability.

None of the authorities cited by the attorney for the State apply to this case. They refer to foreign corporations entirely, and in some of the cases the power of selection is first given to the corporation, with the provision that if it fail to make the appointment, service may be had upon some State official, while in the other cases it is held that a foreign corporation can exercise the right to do business in a State only by comity, or as an act of grace on the part of the State, and the condition upon which the power is extended goes with it, and cannot be separated from it; so that if the privilege is enjoyed, the condition must be performed, and all corporations referred to in these cases were permitted to do business in the State upon the express condition that they appoint a certain person to accept service of process, etc. The case of *Fisher* v. *Traders' Mutual Life Ins. Co.*, 48 S. E. R., is attempted to be applied here. It has no application, because it gives the corporation first the power to select its own agent, and provides that if it fails to make the selection, process may be served on the secretary of the corporation commission. No such right was extended to this defendant. If so, it would have no just ground of complaint, and doubtless would not be complaining. And upon an examination of all the authorities cited by counsel for the State, it will be found that they do not support the State's contention. The State should have the right to require non-resident domestic corporations to appoint an agent or representative in the State to receive service of process and notices in legal proceedings instituted against them, and to provide, upon their failure to make such appointment, that service may be had upon a public official, designated for that purpose, or in some other

prescribed way. But the State has no power to compel a non-resident domestic corporation to appoint any particular officer or person as its agent to accept service of process, etc., until it has been given the right to select some one of its own choosing, and a failure upon its part to do so.

"Judgment against corporation on leaving summons with recorder of deeds, though authorized by statute, is not by due process under the Fourteenth Amendment."—Brannon's Fourteenth Amendment, 263. And the author cites *Pinney* v. *Providence Co.*, 82 N. W. 308, which decides that a statute authorizing service of process on a corporation by leaving a copy of such process with the register of deeds, is unconstitutional, as in violation of the Constitution of the United States declaring that no State shall deprive any person of life, liberty or property without due process of law. There are much stronger reasons for holding in this case that chapter 39 is unconstitutional, than there were for holding unconstitutional the act in the case just cited, for, by the Wisconsin statute, it was required that on or before October 1, 1898, the corporation file in the office of the register of deeds a list of the names of its officers, therein mentioned, on whom service of process, notices or orders, might be made as provided by another section of the statute, and provided further that in all cases where such list of officers was not filed as aforesaid, service of all legal process, notices or other legal proceedings, might be lawfully and effectually made upon any such corporation by giving to and leaving with said register of deeds true copies of such legal process, orders, notices or proceedings, in which case service so made should be valid.

Then again, the defendant is required by this act to pay to the auditor, as its attorney, the stipulated sum of ten dollars for his services. Not only is the right to select its own agent taken away from the corporation, but it is deprived of the liberty to contract with its agent as to the compensation which such agent is to receive for his services. Judge Brannon says: "The auditor is paid by the State, and the State, by its officer, renders valuable service to the corporation." This may be true, but still it is no reason why the defendant can be deprived of the liberty to contract, as

guaranteed to it by the Constitution.     In Brannon's Four-teenth Amendment, page 110, the author says:     "But what does the word 'liberty' mean in American constitutions? This is the test question here, for it means in the Fourteenth Amendment just what it means in the State constitutions.     It means personal liberty.     This includes more than mere ex-emption from imprisonment.     I should say that it means exemption or immfunity rom unlawful imprisonment or de-tention of the body, freedom to go or come on lawful business or pleasure, commonly called the right of locomotion; the right to acquire, hold and convey property; the right to make contracts and to labor in any lawful calling to earn a living;" etc.

In *State* v. *Peel Splint Coal Co.*, 36 W. Va. 856, JUDGE BRANNON, in delivering the opinion of theCourt, says: "The word 'liberty,' as here used, does not mean simply exemption from bodily imprisonment, but liberty and freedom to engage in lawful business, to make lawful contracts therein, to the end of earning a livelihood for self and family, and of acquir-ing and enjoying property, and of obtaining happiness. The right to contract and be contracted with is indispensable to these indispensable objects.     *  *  *     Vain would be the the pursuit of happiness if the right of contract necessary to secure the bread of life and raiment and home be taken away. Scarcely any of the great cardinal rights are more universally recognized and vindicated under our system, indeed under all civilized governments, than this right of contract."     I fully concur with the Court in construing this constitutional pro-vision and defining the word "liberty" as embracing the right to contract and be contracted with, and if this is the proper con-struction, then it seems to me that no argument is necessary to show that the act in question is unconstitutional, because it deprives the defendant of its right to contract with its agent.

The validity of the act in question is upheld by the Court by virtue of section 8, chapter 53, Code, for JUDGE BRANNON, speaking for the Court, says: "But for said section 8, we need not, do not say whether or not the act would be valid." If chapter 39, Acts, 1905, is unconstitutional but for said section 8, I fail to see how this section can rob it of its un-constitutional features, and render constitutional an unconsti-

tutional act. It is true the State in said section 8 reserved the power to alter any charter or certificate of incorporation, and to alter or repeal any law applicable to a joint stock company. This is a legislative and not a constitutional reservation, and while the State has reserved such powers, yet it cannot reserve to itself the right to pass an act in derogation of the Constititution. Therefore, section 8, chapter 53, cannot relieve the act in question of its unconstitutional features. Mr. Justice Cooley, in *Detroit* v. *Howell Plank Road Co.*, 43 Mich. 140, speaking of the provision of the Constitution of the United States, which forbids the impairment of obligation of contracts, says that, but for this provision, "the power to amend and repeal corporate charters would be ample without being expressly reserved. The reservation of the right leaves the State where any sovereignty would be, if unrestrained by express constitutional limitations and with the powers it would then possess. It might, therefore, do what it would be admissible for any constitutional government to do when not thus restrained, but it could not do what would be inconsistent with constitutional principles."

In *Citizens Bank* v. *Owensboro,*, 173 U. S. 636, and many other cases, it is said, in upholding the reserved powers to alter or repeal the charter of a corporation, that under such reservation the legislature may exercise the right without impairing the obligation of the contract. This is because the reservation qualifies the grant, and whenever the legislature exercises the power which it has expressly reserved, it does not impair the obligation of its contract, because it is a part of the contract that it shall be at liberty to exercise that power. It is not claimed that chapter 39 is invalid because it impairs the obligation of a contract, but because it is in conflict with the Fourteenth Amendment to the Constitution of the United States. The State cannot reserve unto itself the power to pass an unconstitutional act. Whatever power the State may possess over corporations in their creation, or in passing or amending the laws under which they are formed, it cannot withdraw from them the guarantees of the Federal Constitution.

The object of the reservation, in whatever form expressed, was to preserve to the State control over the corporate fran-

chise, rights and privileges, which in her sovereign or legislative capacity she had called into existence; in other words, to enable her to annul or modify that which she had created. It was not its object to interfere with contracts which the corporation, when once created, might make, nor with the property which it might acquire. With respect to everything else, it gives no power that the State would not have had without it. The artificial body created by the legislature is composed of natural persons who have combined their property to obtain an object beyond their individual resources, and who are clearly entitled, under the guaranties of the Constitution, to be secured in the possession and use of their property thus held, with the liberty to contract in regard thereto, as before they had associated themselves together. Mr. Justice Field says: "Whatever the State may do with the creations of its own will, it must do in subordination to the inhibitions of the Federal Constitution. It may confer by its general laws upon corporations certain capacities of doing business and having perpetual succession in its members. It may make its grant in these respects revocable at pleasure; it may make it subject to modifications; it may impose conditions upon its use and reserve the power to change these at will. But whatever property the corporation acquires in the exercise of these capacities conferred, it holds under the same guarantees which protect the property of individuals from spoilation; it cannot be taken for public use without compensation; it cannot be taken without due process of law: nor can it be subjected to burdens different from those laid upon the property of individuals under like circumstances."

For the foregoing reasons, I would refuse the writ.