## VANCE v. PULLMAN CO.

### (Circuit Court, N. D. West Virginia. April 1, 1908.)

1. CORPORATIONS—FOREIGN CORPORATIONS—SERVICE — STATUTES — CONSTRUCTION.

Code W. Va. 1906, § 2322, permits foreign corporations to do business in West Virginia on equal terms with domestic and nonresident corporations on complying with certain conditions, and obtaining and recording a certificate from the Secretary of State. Section 3805 declares that the State Auditor shall be attorney in fact for and on behalf of every foreign corporation doing business within the state, which by power of attorney shall appoint such Auditor attorney in fact to accept service for it, and section 3810 declares that any corporation failing to comply with the act, so far as relates to the appointment of the Auditor as statutory attorney, shall forfeit $100 for such failure, and, on failure to pay the penalty, its charter shall be forfeited. *Held*, that section 3805 did not constitute the Auditor the attorney in fact for every foreign corporation doing business in the state, but only such as in the first instance determined for themselves that they were doing business within the state, and hence service of process against a foreign corporation who had never complied with such act nor with section 2322, and claimed that it was not doing business within the state, was insufficient to confer jurisdiction over it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 2619.

Service on foreign corporations, see notes to Eldred v. American Palace Car Co. of New Jersey, 45 C. C. A. 3; Cella Commission Co. v. Bohlinger, 78 C. C. A. 473.]

2. SAME.

If such corporation were doing business in the state illegally, the State Auditor was nevertheless not authorized to accept service for it until he had been constituted its attorney by power executed by such corporation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 2619.]

**3. SAME—JURISDICTION—FOREIGN ATTACHMENT.**

Where a foreign corporation had not complied with West Virginia laws, authorizing foreign corporations to do business within the state, and claimed that it was not doing business there, the courts of such state could not acquire jurisdiction over it except in rem by foreign attachment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 2570.

Jurisdiction over corporations, see note to St. Louis, I. M. & S. Ry. Co. v. Newcom, 6 C. C. A. 174.]

## On Motion to Quash Summons, and Return of Service Thereon.

Plaintiff instituted this suit to recover damages for personal injuries alleged to have been sustained by her at the hands of defendant's employés while she was a passenger on one of its cars between Maricopa, Ariz., and St. Louis, Mo. She alleges herself to be a citizen of Mineral county, W. Va., and the defendant to be a corporation under the laws of the state of Illinois. On January 31, 1907, the summons in the case was issued returnable to the first Monday in March following, and on February 13, 1907, the marshal made the following return of service thereon: "Served the within summons on the within named the Pullman Company by delivering a true copy thereof to Arnold C. Scherr, Auditor of the state of West Virginia, and attorney in fact for said company, in the city of Charleston, Kanawha county, West Virginia, on the 13th day of February, 1907, that being the county of the residence of said Scherr, the said company not having any place of business in said state of West Virginia, and there not being in the state any president, cashier, treasurer, chief officer, or other officer or director, trustee or agent, or secretary of said company, or any member of its board of trustees, directors or visitors, or any person, other than said Auditor, appointed by law to accept service of process." On May 14, 1907, defendant's attorneys appearing specially, and only as amicus curiæ, moved to quash the summons and return thereon indorsed, and the court having doubt as to the sufficiency of such return and of its jurisdiction over the cause of action in the premises directed an investigation of fact to be made at the bar of the court as to such jurisdiction. The result of such investigation was set forth in an order entered October 15, 1907, wherein the facts shown are stated to be as follows: First. The said Pullman Company regularly and daily runs its pullman cars upon and attached to all regular through Baltimore & Ohio Railroad Company passenger trains running in and through said state. Second. That a citizen of West Virginia, or any person desiring to secure passage and transportation upon one of the defendant's said cars, may upon payment of the regular fare, and in advance of the arrival of said car, publicly purchase at two, or possibly more, railroad stations and ticket offices of said Baltimore & Ohio Railroad Company within the state of West Virginia, a ticket known as a Pullman car ticket entitling the purchaser and holder thereof to a seat and sleeping berth in said car, which ticket is printed or filled in so as to show the date of purchase; the name of the car and the points between which the ticket entitles the purchaser to the seat and berth so purchased. Third. It was further proven that persons desiring to purchase a ticket entitling them to transportation and use of a seat and berth on a car of the defendant company may do so by applying to the regular station agent of the Baltimore & Ohio Railroad Company at stations and offices of said company within said state, which agent will, at the request of the purchaser, telegraph ahead to a necessary and convenient point or station, in or without the state of West Virginia, which may also be done by any individual desiring to secure accommodations, to the conductor of the defendant's car on any desired regular train, and secure by means of telegraphing therefor a seat, berth, and transportation in one of defendant's cars for the person making the application and who pays the fare therefor to the conductor, as fully and to the same extent and effect as the applicant could do if on board such car and in person making the purchase, and all telegraphic messages sent as aforesaid by a ticket agent are sent without any charge or expense to the applicant. Fourth. It is further proven that persons desiring to travel along the lines of the railroads upon

which said cars of the defendant are run, either within said state, or from places within said state to places without said state, are publicly permitted to and may enter and ride in and upon defendant's cars upon payment of the regular Pullman charge and fare then and there paid to the conductor of said car, and receive Pullman transportation from place to place within the state, or from places within it to places beyond its borders. Fifth. It is further proven that the board of public works of the state of West Virginia annually assesses and values the property of the defendant company within said state for the purpose of taxation, which property so valued and assessed consists of defendant's said cars, and that for the year 1906 the valuation of the defendant's said property, so assessed by the board of public works in said state, was $273,000.06, and that for the year 1907 the assessed valuation thereof is also $273,000, and that the said defendant is charged with and has paid taxes on said valuation to the state of West Virginia, and to the counties of said state through which its said cars are run as apportioned by the board of public works. Sixth. It is further proven that annually the defendant company, as required by the laws of the state of West Virginia, gives into the said board of public works, for assessment and valuation, property owned and used by it within the state of West Virginia.

And at the instance of S. W. Walker, who has appeared specially, amicus curiæ, it is further proven and shown that, in consideration for the said payment made by the persons to the Pullman Company or its agents, said company furnishes seats for such persons to sit upon, berths in which to sleep, compartments in which to smoke, water-closets, washing facilities, and upon some cars dining facilities. It was further proven at the bar of the court that the process in this case was served as per the following signed statement of A. C. Scherr, Auditor:

"On the 13th day of February, 1907, a deputy marshal from the office of F. H. Tyree, United States marshal, served the within process on me as the attorney in fact for the Pullman Company. The deputy was informed that I was not the attorney in fact for the Pullman Company under the provisions of chapter 39, p. 401, Acts of 1905. Of this fact the United States marshal was officially advised on the 13th inst. He returned the process with the request that the same be forwarded to Messrs. Faulkner, Walker & Woods, attorneys at Martinsburg. This was done on this 20th day of February, 1907.

"[Signed]                                 A. C. Scherr, Auditor."

H. B. Gilkeson and Wm. McDonald, for plaintiff.
Faulkner, Walker & Woods, for defendant.

DAYTON, District Judge (after stating the facts as above). Under the facts set forth as above, two novel and perplexing questions have been raised by counsel, neither of which has been heretofore determined by either federal or state court. These questions are: First. Under the statutory laws of West Virginia, is the Auditor of State constituted an attorney in fact for this Pullman Company, upon whom service of process can be legally made and jurisdiction over it thereby obtained? Second. Is the defendant "doing business" within the state of West Virginia, within the meaning of chapter 39 of its Acts of 1905 (Code 1906, §§ 3805–3810)?

Under section 1046 of the Code of 1906 corporations in this state are classified into domestic, nonresident domestic, and foreign ones. Domestic ones are those chartered under the laws of the state, and having their principal place of business within the state. Nonresident domestic ones include those chartered under the laws of the state, but having their principal place of business outside of the state. All others are classed as foreign corporations. Under section 2322 of the Code foreign corporations are permitted to do business in the state upon

equal terms with domestic and nonresident domestic ones upon complying with certain conditions set forth, a certificate of which compliance must be issued by the Secretary of State and recorded. This statute provides, however, that nothing in it contained "shall be construed to lessen the liability of any corporation, which may not have complied with the requirements of this section, upon any contract or for any wrong."

The Legislature of the state, by Act Feb. 22, 1905, p. 401, c. 39, embodied in sections 3805 to 3810, inclusive, of the Code of 1906, provided:

"Section 1. The Auditor of this state shall be, and he is hereby constituted, the attorney in fact for and on behalf of every foreign corporation doing business in this state, and of every nonresident domestic corporation. Every such corporation shall, by power of attorney, duly executed, acknowledged and filed in the Auditor's office of this state, appoint said Auditor, and his successors in office, attorney in fact to accept service of process and notice in this state for such corporations, and by the same instrument it shall declare its consent that service of any process or notice in this state on said attorney in fact, or his acceptance thereof indorsed thereon, shall be equivalent for all purposes to, and shall be and constitute, due and legal service upon said corporation.

"Sec. 2. Provides that such corporations shall pay the Auditor an annual fee of ten dollars for acting as such attorney in fact, such fees to be turned into the state treasury by him.

"Sec. 3. The postoffice address of such corporation shall be filed with the power of attorney, and there shall be filed with the Auditor from time to time statements of any changes of address of said corporation. Immediately after being served with, or accepting, any such process or notice, the Auditor shall make and file with said power of attorney a copy of such process or notice with a note thereon indorsed of the time of service, or acceptance, as the case may be, and transmit such process or notice by registered mail to such corporation at the address last furnished as aforesaid. But no such process or notice shall be served on the Auditor or accepted by him less than ten days before the return thereof.

"Sec. 4. In addition to the Auditor, any such company may designate any other person in this state as its attorney in fact, upon whom service of process or notice may be made or who may accept such service. And, when such local attorney is appointed, process in any suit or proceeding may be served on him to the same effect as if the same were served on the Auditor.

"Sec. 5. Failure to pay the attorney's fee as hereinbefore required shall have all the force and effect, and subject such corporation to the same penalties and forfeitures, as are or may be prescribed by law for failure to pay the license tax required to be paid by such corporation.

"Sec. 6. Any corporation failing to comply with the provisions of this act in so far as it relates to the appointment of the Auditor as its statutory attorney, within ninety days from its incorporation shall forfeit one hundred dollars as for such failure, and upon a failure to pay such penalty the charter of such corporation shall thereby be forfeited and be void."

To test the constitutionality of the provisions of this act the St. Mary's Franco American Petroleum Company refused to comply with its requirements, and thereupon the state sued out a writ of mandamus from the Supreme Court of Appeals to require it to do so. This writ was sustained, and the constitutionality of the act upheld. State v. Petroleum Co., 58 W. Va. 108, 51 S. E. 865, 1 L. R. A. (N. S.) 558, 112 Am. St. Rep. 951. From this decision a writ of error was sued out to the Supreme Court of the United States where the state court's decision was affirmed. 203 U. S. 183, 27 Sup. Ct. 132,

51 L. Ed. 144. It is admitted here that the defendant Pullman Company has never complied with the requirements of either this act or those of section 2322 of the Code imposing conditions precedent to its doing business in the state. In fact, it is earnestly insisted that it is not doing business in the state within the meaning and contemplation of either of these acts and is not subject to the exactions of either.

Under these circumstances was the service of this process upon the Auditor legal and sufficient to obtain personal jurisdiction over this company?. It is earnestly insisted by plaintiff's counsel that the first section of the act of 1905, without qualification and in express terms, constitutes the Auditor attorney in fact for and on behalf of every foreign corporation doing business in the state, and that therefore the inherent power as well as the legal obligation vested and was imposed upon such Auditor to act as such attorney. The very serious fallacy with this contention, it seems to me is that, if it were true, the act would not only clothe the Auditor with ministerial duties, but with judicial powers of the highest character. It would then be his prerogative without due process of law to determine whether any or many foreign corporations were or were not "doing business in the state." The ascertainment of this, it must be conceded, under given circumstances, would be a mixed question of law and fact which a judicial tribunal alone would have right to decide. To say that the Legislature could thus constitute one of its ministerial officers the sole arbiter of this question, it seems to me, would unquestionably transgress constitutional limitations. On the other hand, it seems clear that under the terms of section 2322 every foreign corporation has the right to determine for itself, in the first instance, whether it will "do business in the state," and therefore, necessarily, what acts of its will, and what ones will not, constitute such "doing business" on its part. It makes this decision at its peril, subject to the state's right to prosecute, and by due process of law punish it in case its acts be judicially determined to have been a doing of business in the state. This seems to me to have been clearly understood by the Legislature in framing the act of 1905, as shown by its subsequent provisions.

All these provisions must be read and construed together. The state had full control over its Auditor, and had full power to impose upon him any new ministerial duties it might see fit to so impose. By this first section it does impose upon him the new duty of acting as attorney in fact for all these foreign corporations doing business in the state. But when it comes to the corporation itself, recognizing its right to determine whether or not it will do business in the state, it simply says to it, if you do, you shall accept, and by power of attorney duly executed, acknowledged, and filed appoint such Auditor your attorney in fact, clothing him with power to act in manner, to the extent and under the conditions set forth in the act. It seems to me very clear, after careful consideration of the matter, that this was as far as the Legislature could go. It is noted that Judge Sanders in his dissenting opinion in State v. Petroleum Co., supra, thought it could not go this far. It seems to me Judge Brannon very clearly

points out that the law in effect inserts or reads the obligation to comply with these provisions into either the charter or the certificate authorizing the corporation to do business in the state, and as he well says:

"If the corporation do not see proper to conform to it, it must discontinue business, as the Legislature cannot force it to do business under the change."

In short, under the freedom of contract guaranteed by constitutional provisions a corporation cannot be compelled by law to appoint and constitute any particular person as agent, or any agent at all, to perform this duty of accepting process, but it can be prevented from doing business in the state unless it does appoint such agent upon the principles so well settled in Bank v. Earle, 13 Pet. 519, 10 L. Ed. 274, that a corporation can have no legal existence out of the boundaries of the sovereignty by which it is created. Its right to do business in a state other than its own depends solely upon the permission of the latter state, and such permission may be upon such terms, conditions, and restrictions as it may prescribe. It is therefore clear to me that this foreign corporation defendant, not having complied with the requirements of these statutes, is not allowed to do business in the state, and has no legal existence in the state such as would authorize the courts of the state or this court to take jurisdiction over it in any way except in rem by foreign attachment. But even if it were doing business in the state illegally, I am clearly of opinion that the Auditor cannot, under this statute, undertake to act as its agent to accept service of process until he shall have been constituted by power of attorney executed by such company such agent. Having reached this conclusion, it is unnecessary to consider the second question presented as to whether or not the defendant is in fact doing business in the state. If it is it is subjecting itself to the criminal penalty, and with this we can have no concern. It is sufficient for us to find that it is not entitled to do business in the state because it has not constituted the Auditor its attorney in fact, and until it shall so appoint such Auditor its agent he cannot act as such, and service upon him could have no more valid legal effect than such service would have if made upon any other stranger to the defendant company and its management.

The motion to quash the return of service upon the summons will be sustained.