BALDWIN TOOL WORKS et al. v. BLUE, State Tax Com'r, et al.

(District Court, N. D. West Virginia. December 16, 1916.)

1. CORPORATIONS ⚙️636—FOREIGN CORPORATIONS—POWER OF STATE TO REGULATE.

A state has power to prescribe conditions on which foreign corporations are permitted to do business within its limits.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2505–2509, 2571; Dec. Dig. ⚙️636.]

2. COMMERCE ⚙️69—EXCISE TAX ON CORPORATIONS—VALIDITY OF STATUTE.

A state statute, enacted under authority given by the state Constitution imposing a special excise tax on corporations, both foreign and domestic, for the privilege of doing business, based on their net income from business done within the state, is not unconstitutional, as imposing a burden on interstate commerce, or otherwise invalid because, in case of a corporation doing business and having capital invested within and also without the state, the measure of the tax may be determined partly from income derived from business of an interstate character.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 100, 113–119; Dec. Dig. ⚙️69.]

3. CONSTITUTIONAL LAW ⚙️126—OBLIGATION OF CONTRACTS—STATE LAW IMPOSING EXCISE TAX ON CORPORATIONS.

A corporation of West Virginia takes its charter subject to Code W. Va. 1913, c. 53, § 8 (sec. 2841), which reserves to the Legislature the right to alter or repeal the charter of any corporation, or any law relating thereto, and the State Corporation Excise Law of May 24, 1915 (Acts 1915, c.

3), imposing a special excise tax upon all corporations for the privilege of doing business in the state, is not in violation of the federal Constitution, as impairing the obligation of the contracts made with domestic corporations.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 325, 366–369; Dec. Dig. ⊜126.]

4. CONSTITUTIONAL LAW ⊜230(3)—EQUAL PROTECTION OF LAWS—EXCISE TAX ON CORPORATIONS.

A state statute, imposing a special excise tax on corporations for the privilege of doing business in the state, is not unconstitutional, as depriving the corporations affected of the equal protection of the laws.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 687; Dec. Dig. ⊜230(3).]

5. TAXATION ⊜47(4)—EXCISE TAX ON CORPORATIONS—VALIDITY OF STATUTE.

A statute, imposing a special excise tax on corporations for the privilege of doing business in the state, is not invalid, as requiring payment of a double tax, because the corporations are also subject to a state license tax on their charters.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 108; Dec. Dig. ⊜47(4).]

6. TAXATION ⊜605—EXCISE TAX ON CORPORATIONS—VALIDITY OF STATUTE.

A state statute, imposing an excise tax upon corporations, is not invalid because of a provision requiring a corporation, as a condition precedent to the maintenance of a suit to enjoin collection of the tax as excessive, to pay into the treasury the amount of the tax admitted to be due.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1229; Dec. Dig. ⊜605.]

7. TAXATION ⊜608(9)—RESTRAINING ENFORCEMENT—STATUTORY REMEDY.

Where a state tax statute makes adequate provision for the testing in the courts of the validity of any tax imposed thereunder, claimed to be in violation of the federal or state Constitution, a federal court will not interfere by injunction to restrain its enforcement.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1238; Dec. Dig. ⊜608(9).]

In Equity. Suit by the Baldwin Tool Works and others against Fred D. Blue, State Tax Commissioner, and others, for injunctions to restrain enforcement of the West Virginia Corporation Excise Tax Law. Decree for defendants.

George R. E. Gilchrist, of Wheeling, W. Va., for plaintiffs.

A. A. Lilly, Atty. Gen., of W. Va., and Fred O. Blue, of Charleston, W. Va., for defendants.

Before PRITCHARD and WOODS, Circuit Judges, and WADDILL, District Judge.

PRITCHARD, Circuit Judge. We will consider, in the order in which they are presented in the bill, the various grounds upon which it is insisted by plaintiffs that the statute is unconstitutional.

The plaintiffs' first proposition is that this law violates the provisions of subsection 3 of section 8, article 1, of the Constitution of the United States, which provides that the Congress shall have power "to

regulate commerce with foreign nations and among the several states."

Section 5 of the statute (Acts W. Va. 2d Ex. Sess. 1915, c. 3) is in the following language:

"Every corporation, joint-stock company, or association organized for profit, and having a capital stock represented by shares, and every insurance company, respectively, now or hereafter organized under the laws of this state, or under the laws of any other state or government and engaged in any business whatsoever in the state of West Virginia, shall pay an annual special excise tax for the privilege of carrying on or doing business in the state of West Virginia, equivalent to one-half of one per centum upon the entire net income of such company, received by it from all sources during the year, on business transacted and capital invested in this state, as hereinafter set forth: Provided, however, that nothing in this section contained shall apply to labor, agricultural or horticultural organizations; nor to mutual savings banks not having a capital stock represented by shares and which are operated exclusively for the benefit of their depositors; nor to cemetery companies, which are organized and operated exclusively for the benefit of their members; nor to fraternal beneficiary societies, orders or associations operating under the lodge system, or for the exclusive benefit of the members of a fraternity itself operating under the lodge system, and providing for the payment of life, sick, accident, and other benefits to the members of such societies, orders or associations, and dependents of such members; nor to domestic building and loan associations organized and operated exclusively for the benefit of their members; nor to any corporation or association organized and operated exclusively for religious, charitable, scientific or educational purposes; nor to business leagues, chambers of commerce or boards of trade, or to any civic league or organization organized and operated exclusively for the promotion of social welfare, none of which said organizations, savings banks, cemetery companies, fraternal beneficiary societies or fraternities, building and loan associations, charitable, religious, scientific or educational associations, business leagues, chambers of commerce or boards of trade, or civic leagues, named in this proviso, are organized for profit, and no part of the net income of which inures to any private stockholder or individual."

Also section 13 is as follows:

"The special excise tax imposed by this act shall be a tax in addition to all license or other taxes now imposed or prescribed by law as a condition for the transaction of any business in this state, by any corporation, joint-stock company, association, or insurance company; and when paid, shall authorize the company making payment to engage in the business authorized by its charter, if otherwise lawful, and if such authority be not otherwise forfeited, within the state of West Virginia for the year for which the same is levied. At the time of paying the taxes the state tax commissioner shall issue to the company paying the same a certificate of payment for the proper fiscal year."

The special excise tax authorized by the above statute is a tax in addition to the license tax provided by sections 126 and 130 of the act. Inasmuch as the larger portion of section 7 relates to administrative features, we deem it only important to call attention to the latter part of the act, which is in the following language:

"It is the intention of this chapter to assess the tax imposed thereby on the net income as defined therein of the corporations, joint-stock companies, associations, and insurance companies named in section four [the term "four" apparently being used inadvertently for the term "five," and so interpreted and applied by the state tax commissioner] arising from business transacted and capital invested in this state. Every such company having capital invested in its business in this state only, shall pay the tax upon its entire net income ascertained as herein provided; and every such company, except an

insurance company, engaged in business and having capital invested and transacting business both in and out of the state, shall pay the tax upon that part of its entire net income which bears the same proportion to its whole net income that the assessed value for purposes of taxation of its assets and property within the state bears to the total assessed value of all of its assets and property in the jurisdictions where it is located. Insurance companies transacting business both in and out of the state shall pay the tax upon that part of the entire net income which bears the same proportion to the whole net income ascertained, as herein provided, that the gross receipts from business transacted within the state bears to the total gross receipts from all sources from the period the tax is assessed.

"No life insurance company, subject to the tax imposed by this act, and the tax of two per centum on its premium income imposed by chapter seventy-seven of the acts of one thousand nine hundred and seven, nor any agent thereof, shall be required to pay a license or other like tax to any municipal corporation for the privilege of transacting business therein."

Section 1, article 10, of the Constitution of West Virginia, provides:

"The Legislature shall have power to tax, by uniform and equal laws, all privileges and franchises of persons and corporations."

[1] Thus it will be seen that under the Constitution of West Virginia the state has the power to tax all privileges or franchises of persons and corporations within the borders of that state, and this power relates not only to corporations created by the laws of West Virginia, but also applies to corporations permitted to transact business within the borders of the state. In the case of St. Mary's Franco-American Petroleum Co. v. West Virginia, 203 U. S. 183, 27 Sup. Ct. 132, 57 L. Ed. 144, it was held:

"A state has power to regulate its own creations, and a fortiori foreign corporations permitted to transact business within its borders."

This proposition is well established, and we content ourselves by citing the following additional cases in support thereof: Maine v. Grand Trunk Railway Co., 142 U. S. 217, 12 Sup. Ct. 121, 35 L. Ed. 994; St. Louis S. W. Ry. v. State of Arkansas, 235 U. S. 350, 35 Sup. Ct. 99, 59 L. Ed. 265; Flint v. Stone Tracy Co., 220 U. S. 107, 31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312.

Plaintiffs insist that the statute undertakes to regulate interstate commerce. While the statute imposes a special tax in addition to other license taxes, ascertained in some instances by the income that may arise in interstate transactions, nevertheless this is not a tax upon interstate commerce, nor can we conceive of any theory upon which it may be properly said to be a burden upon interstate commerce.

[2] It is urged by plaintiffs that the method employed by the state to ascertain the measure of tax is not a proper one, in that it imposes a burden upon interstate commerce because the entire net return shall be made whether such net income is earned wholly within or partly without the state; further, because the tax is determined partly by the assessed value of property within the state, and has assessed the valuation of property without the state as to such corporation as may be doing business partly within the state and partly without the state; also that under the provisions of the act the same corporation is assessed on a comparatively higher basis within the state than its prop-

erty in other states is assessed. A careful consideration of the provisions of the statute as respects this question leads us to the conclusion that the method employed for ascertaining the amount of tax which the corporation is required to pay is perhaps as fair, as a general rule, as any scheme that could be devised for that purpose. Undoubtedly the state of West Virginia has the right to base its tax upon the return of the entire net income in the respective states, and to apportion the amount of income thus ascertained as a means of ascertaining the net income subject to taxation by the state. Maine v. Grand Trunk Railway Co., supra, 142 U. S. 217, 12 Sup. Ct. 121, 35 L. Ed. 994; Baltic Mining Co. v. Massachusetts, 231 U. S. 68, 34 Sup. Ct. 15, 58 L. Ed. 127; U. S. Ex. Co. v. Minnesota, 223 U. S. 335, 32 Sup. Ct. 211, 56 L. Ed. 459.

It has been held repeatedly that the entire value of an interstate corporation engaged as an interstate carrier may be considered, and the entire value of such corporation may be fixed as the value of the property in a state, as the mileage in that state is proportioned to the entire mileage of the road. The Supreme Court of the United States, in the case of Cleveland, Cincinnati, Chicago & St. Louis Railway Co. v. Backus, 154 U. S. 439, 14 Sup. Ct. 1122, 38 L. Ed. 1041, in referring to this point, said:

"Now, when a road runs into two states, each state is entitled to consider as within its territorial jurisdiction and subject to the burdens of its taxes what may perhaps not inaccurately be described as the proportionate share of the value flowing from the operation of the entire mileage as a single continuous road. It is not bound to enter upon a disintegration of values and attempt to extract from the total value of the entire property that which would exist if the miles of road within the state were operated separately. Take the case of a railroad running from Columbus, Ohio, to Indianapolis, Ind. Whatever of value there may be resulting from the continuous operation of that road is partly attributable to the portion of the road in Indiana and partly to that in Ohio, and each state has an equal right to reach after a just proportion of that value, and subject it to its taxing processes. The question is, How can equity be secured between the states? and to that a division of the value of the entire property upon the mileage basis is the legitimate answer. Taking a mileage share of that in Indiana is not taxing property outside of the state.

"The second question must also be answered in the negative. It has been again and again said by this court that, while no state could impose any tax or burden upon the privilege of doing the business of interstate commerce, yet it had the unquestioned right to place a property tax on the instrumentalities engaged in such commerce. See, among many other cases, Marye v. Baltimore & Ohio Railroad, 127 U. S. 117 [8 Sup. Ct. 1037, 32 L. Ed. 94]; Pullman's Palace Car Co. v. Pennsylvania, 141 U. S. 18 [11 Sup. Ct. 876, 35 L. Ed. 613]."

As we have stated, the statute provides for the assessment and collection of the tax under the power conferred upon it by the Constitution of the state; but the fact that the measure of that tax may be determined partly from the business of an interstate character could not be said to be such an interference with interstate commerce as to render the act unconstitutional. The Supreme Court of the United States, in the case of United States Express Co. v. Minnesota, supra, 223 U. S. 335, 32 Sup. Ct. 211, 56 L. Ed. 459, said:

"While we have no disposition to detract from the authority of these decisions, this court has had also to consider and determine the effect of statutes which undertake to measure a tax within the legitimate power of the state by receipts which came in part from business of an interstate character. In that class of cases a distinction was drawn between laws burdening interstate commerce, and laws where the measure of a legitimate tax consists in part of the avails or income from the conduct of such commerce. In Maine v. Grand Trunk Ry. Co., 142 U. S. 217 [12 Sup. Ct. 121, 35 L. Ed. 994], this court sustained a tax which required every railroad operated within the state to pay an annual tax for the privilege of exercising its franchises therein, determined upon a proportion of gross transportation receipts, which in that case were shown to be those of a railroad partly within and partly without the state, such gross receipts being derived from its entire business, state and interstate. The resort to the gross receipts, in the opinion of the court, was merely a means of ascertaining the business done by the corporation, and thus measuring the tax, which was held to be within the power of the state. In Wisconsin & Michigan Railway Co. v. Powers, 191 U. S. 379 [24 Sup. Ct. 107, 48 L. Ed. 229], a tax was sustained which made the income of the railway company within the state, including interstate earnings, the prima facie measure of the value of the property within the state for the purpose of taxation."

[3] It is also insisted by plaintiffs that section 10 of article 1 of the Constitution of the United States provides that no state shall pass any law impairing the obligation of contracts. The law of West Virginia bearing upon this point is to be found in section 8 of chapter 53 (sec. 2841) of the Code of that state, and reads as follows:

"Where the Legislature has the right to alter or repeal the charter or certificate of incorporation heretofore granted to any joint-stock company, or to alter or repeal any law relating to such company, nothing contained in this chapter shall be construed to surrender or impair such right. And the right is hereby reserved to the Legislature to alter any charter or certificate of incorporation hereafter granted to a joint-stock company, and to alter or repeal any law applicable to such company. But in no case shall such alteration or repeal affect the right of the creditors or the company to have its assets applied to the discharge of its liabilities, or of its stockholders to have the surplus, if any, which may remain after discharging its liabilities and the expenses of winding up its affairs, distributed among themselves in proportion to their respective interests."

This question was passed upon by the Supreme Court of West Virginia in the case of State v. Petroleum Co., 58 W. Va. 108, 51 S. E. 865, 1 L. R. A. (N. S.) 558, 112 Am. St. Rep. 951, 6 Ann. Cas. 38. The court held in that case that, when the defendant obtained its charter, section 8 of the Code, above quoted, being in force, the charter was granted subject to the provisions of such section; that the reservation contained therein of the right either to amend the charter or to change the law regulating it was without legislative limitation; and that it included the right of repeal. It also held that the provisions of this section should be read into the charter and be treated as a part of it—in other words, that when the defendant accepted the charter, it did so with full notice of the fact that the state had reserved the right to alter, amend, or repeal the law by which it was created. In the case of Blue Jacket Copper Co. v. Scherr, Auditor, 50 W. Va. 533, 40 S. E. 514, a case in which this question was involved, the court, among other things, said:

"Little is presented here, by way of argument, to show that there is any violation of the provisions of the Constitution of the United States prohibit-

ing any state from passing any law impairing the obligation of a contract. This corporation obtained its charter from the state after this classification had been made. Since it obtained its charter, the state has increased the annual license tax upon it. So it only amounts to a question of whether the state has the right to increase a tax of that kind. Where a certain tax is imposed on a corporation by its charter, the Legislature does not thereby disable itself from imposing upon it a different or more onerous tax in the future."

From what we have said it necessarily follows that the statute does not violate the provisions of section 10, article 1, of the federal Constitution, and that the Legislature was well within the meaning of section 8 of chapter 53 of the Code of West Virginia in the enactment of the statute in question.

It is also insisted that the statute is in violation of section 2, article 4, of the Constitution of the United States, which provides that citizens of each state shall be entitled to all privileges and immunities of citizens of the several states. The Supreme Court, in the case of Selover, Bates & Co. v. Walsh, 226 U. S. 112, 33 Sup. Ct. 69, 57 L. Ed. 146, as well as in a number of other cases, has disposed of this proposition. The last syllabus in that case is in the following language:

"A corporation cannot claim the protection of the clause of the Fourteenth Amendment which secures the privileges and immunities of citizens of the United States against abridgment or impairment by the laws of a state. Western Turf Association v. Greenberg, 204 U. S. 359 [27 Sup. Ct. 384, 51 L. Ed. 520]."

It is further insisted by plaintiffs that the passage of this act is inhibited by the following provisions of the Constitution of the United States:

"Fifth. Section 1 of the Fourteenth Amendment to the federal Constitution which provides that no state shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States, and authorities supra.

"Sixth. Section 1 of the Fourteenth Amendment which further forbids any state to deprive any person of life, liberty or property without due process of law."

These propositions have been decided adversely to the contention of plaintiffs by the Supreme Court of the United States, as well as other courts, notably among the cases being Flint v. Stone Tracy Co., supra, 220 U. S. 108, 31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; Baltic Mining Co. v. Massachusetts, supra, 231 U. S. 68, 34 Sup. Ct. 15, 58 L. Ed. 127; Blue Jacket Copper Co. v. Scherr, Auditor, supra, 50 W. Va. 533, 40 S. E. 514; State v. Petroleum Co., 58 W. Va. 108, 51 S. E. 865, 1 L. R. A. (N. S.) 558, 112 Am. St. Rep. 951, 6 Ann. Cas. 38.

In the eighth paragraph of the bill it is alleged that:

"One or more of the plaintiffs is a mere holding company, all of whose income is received from property located outside of the state of West Virginia. Under said section 147, which provides that every such corporation 'engaged in any business whatsoever in the state of West Virginia' shall pay the tax prescribed by said law upon the entire net income of such company received by it from all sources during the year on business transacted in this state, every such plaintiff is required by said state tax commissioner to pay

said tax on all of its income, because the receiving of such income constitutes doing business within this state, and constitutes all of the business which said company does, although none of its earning property is in fact located in this state."

In response to this allegation it is averred that the state tax commissioner—

"does require a holding company, when such holding company is a resident corporation with its principal place of business in West Virginia, and transacting its business as such, in such state, to return the income that it receives in its business as such holding company as a measure to determine the tax; but this is required only of such holding companies, as such, when the holding company is a West Virginia resident corporation with its principal place of business in the state of West Virginia and carrying on such business in the state of West Virginia."

It will be observed that defendants expressly deny that a holding company "engaged in any business whatsoever in the state of West Virginia," is required to return the income that it received in its business as such holding company as the measure to determine the tax, except when it appears that such holding company is a West Virginia resident corporation, with its principal place of business within the state. Thus it will be seen that the defendants by their answer squarely present an issue, and on this issue the burden is upon plaintiffs to establish the truthfulness of the allegations of the complaint. This the plaintiffs have failed to do, and we therefore assume that defendants' contention as respects this point is correct.

We fail to understand the theory upon which it is contended that where the state of West Virginia has granted a charter to a domestic corporation, whose principal place of business is in that state, the fact that its net income is derived principally or wholly from business outside the state relieves it from the payment of the tax authorized by the statute. Such corporations accepted their charters with full knowledge of the provisions of the Constitution and the laws of that state. Therefore, as we have already stated, we think that the contention of plaintiffs that the state exceeded its power in the enactment of the statute is without merit.

[4] It is also insisted that the statute is in violation of section 1 of the Fourteenth Amendment, which forbids any state to deny to any person within its jurisdiction equal protection of the law. It is well settled that, where an act requires the payment of a privilege or immunity tax by a corporation, such requirement does not deprive such corporation of the equal protection of the laws. If the state should be denied this power, it would result in great confusion and embarrassment, and render it practically impossible to raise a sufficient revenue with which to defray the necessary expenses of the state. Such being the case, it has been very properly held to be within the power of the state to levy and collect taxes of this character.

[5] It is also urged that plaintiffs were denied a substantial right by this statute, in that it requires them to pay a double tax. The section referring to this matter is in the following language:

"Every resident and nonresident domestic corporation shall pay a license tax on its charter for the fiscal year beginning the first day of July, one thou-

240 F.—14

sand nine hundred and fifteen, and annually thereafter, based on its authorized capital stock as follows." Section 3.

Under the foregoing provision it appears that the statute was not in effect on the 1st day of July, 1915. However, it is insisted by counsel for defendants that, inasmuch as it was passed and approved prior to the 1st day of July, 1915, it was thereby notice to all corporations engaged in business during the months of May and June that, if such corporations desired to continue in business during the fiscal year beginning òn the 1st day of July, 1915, they would be required to pay the tax provided for by the statute. In other words, all corporations in the state on and after the 24th day of May, 1915, had notice of the fact that on and after the 1st day of July of that year they would be required to pay this additional tax, and that it was optional with them as to whether under such circumstances they would continue to transact business in the state subject to the provisions of the statute, and, having decided to continue to do business in the state, they thereby acceded to the terms of the statute, and cannot now be heard to say that the state has dealt unfairly with them in the enactment of this law. A double tax, properly speaking, would be to tax the same property twice for the same purpose; but such is not the case in this instance. Among other things, the statute provides that this special excise tax—

"shall be a tax in addition to all license or other taxes now imposed or prescribed by law as a condition for the transaction of any business in this state, by any corporation, joint-stock company, association, or insurance company; and when paid shall authorize the company making payment to engage in the business authorized by its charter, if otherwise lawful," etc. Section 13.

[6] The plaintiffs insist that the statute fails to provide any means by which they can take an appeal to the courts from the action of the board of public works, where they may feel aggrieved by the orders of that board. Section 10 of the act is in the following language:

"If any company, making a return as provided by this act, feels aggrieved by the assessment so made upon it for any year by the state tax commissioner, it may apply to the board of public works by petition, in writing, within thirty days after notice is deposited as provided in the preceding section, for a hearing and a correction of the amount of the tax so assessed upon it by the state tax commissioner, in which petition shall be set forth the reasons why such hearing should be granted and the amount such tax should be reduced. The board shall promptly consider such petition, and may grant such hearing or deny the same. If denied, the petitioner shall be forthwith notified thereof; if granted, the board shall notify the petitioner of the time and place fixed for such hearing. After such hearing the board may make such order in the manner as may appear to them just and lawful, and shall furnish a copy of such order to the petitioner."

Section 11 provides that:

"No injunction shall be awarded by any court or judge to restrain the collection of taxes imposed by this act, * * * except upon the ground that the assessment thereof was in violation of the Constitution of the United States, or of this state; or that the same was fraudulently assessed; or that there was a mistake made in the amount of taxes assessed upon such corporation, joint-stock company, * * * or insurance company."

It is further provided that no such injunction shall be awarded unless application has first been made to the board of public works to correct such mistake, and it shall apply if the board has refused to do so, which fact is required to be stated in the bill. As a condition precedent it is provided that the injunction shall not be allowed unless the plaintiffs pay into the treasury all the taxes alleged to be due. Thus it clearly appears that if the plaintiffs should apply to the board of public works to correct an alleged mistake, and the board should fail to correct the same, the plaintiffs in that event would be entitled to their remedy in a suit in equity to restrain the collection of any portion of the taxes alleged to have been improperly assessed.

[7] We find nothing unfair in the requirement that the plaintiffs pay into the treasury any taxes they may concede to be due as a condition precedent to the relief afforded by this section. This is a principle well recognized in equity. In addition to what he have said, an examination of section 11 shows that a court of equity has unlimited jurisdiction to restrain the collection of taxes, if it is in violation of the state or federal Constitution, or if fraudulently assessed. Thus it will be seen that the right to test the constitutionality of the act in question is fully provided for by the statute, and in any case where a corporation may desire to attack the validity of the act upon the ground that it is in violation of the Constitution of the United States, such corporation may institute suit in a court of equity, and if in the court below the judgment should be adverse to plaintiffs, then they would have the right to carry the same to the Supreme Court of the state, and if again defeated in that forum would still have a right to take the case to the Supreme Court of the United States for final determination. The statute having provided what we conceive to be a complete and adequate remedy, this court will not by injunction interfere with the state in the exercise of the rights conferred upon it by the statute. Indiana Mfg. Co. v. Koehne, 188 U. S. 681, 23 Sup. Ct. 452, 47 L. Ed. 651; Dalton Adding Machine Co. v. State Corporation Commission of the Commonwealth of Virginia, 236 U. S. 699, 35 Sup. Ct. 480, 59 L. Ed. 797.

The plaintiffs insist that this is an income rather than an excise tax. An examination of the statute impels us to the conclusion that this is not an income, but a special excise, tax. Therefore many of the cases relied upon by plaintiffs do not, in our opinion, apply to the case at bar. We have carefully examined all cases cited by plaintiffs, but find nothing therein to cause us to modify the views herein expressed.

For the reasons stated, we are of opinion that the plaintiffs have not shown that they are entitled to the injunctive relief prayed for, and the same should be denied. Further, even if plaintiffs had a good cause of action, the statute, as we have said, affords a full and adequate remedy.

A decree will be entered accordingly.