(Nos. 14776-14777.—Judgments affirmed.)

JOHN CARLSON, Appellee, *vs.* THE CARPENTER CONTRACT-
ORS' ASSOCIATION OF CHICAGO *et al.* Appellants.—OSCAR
CARLSON, Appellee, *vs.* Same Appellants.

*Opinion filed October 21, 1922—Rehearing denied Dec. 13, 1922.*

1. MONOPOLY—*cause of action arises from invasion of right to
free market.* An individual has a right to a free and open market
in which to purchase materials with which to improve his prop-
erty, and anyone who invades such right without lawful cause or
justification commits a legal wrong.

2. SAME—*when person has cause of action for interference with
free market.* Where carpenter contractors and employers have en-
tered into an agreement with the dealers in building material not
to furnish any material to union men or to those employing union
labor, a union laborer who is thereby prevented from working for
an employer who is willing to hire him, or an employer or individ-
ual who is thereby prevented from carrying on the lawful improve-
ment of his property, is entitled to an action for damages if he can
prove loss or injury.

3. CONTRACTS—*individuals cannot by contract prevent another
from carrying on lawful business.* No persons, individually or by
combination, have the right to directly or indirectly interfere with
or disturb another in his lawful business or to compel him to do
some act which in his own judgment his interest does not require,
and loss willfully caused to one who seeks to exercise and enjoy
the fruits and advantages of his own enterprise, industry, skill or
credit will sustain an action.

APPEAL from the Appellate Court for the First Dis-
trict;—heard in that court on appeal from the Municipal
Court of Chicago; the Hon. WELLS M. COOK, Judge, pre-
siding.

JOHN H. S. LEE, ALBERT FINK, ROBERT W. CHILDS,
and JAMES B. WESCOTT, for appellants.

HOPE THOMPSON, for appellees.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

John Carlson, plaintiff in No. 14776, is a journeyman carpenter and a member of the carpenters' union. July 18, 1919, and for a long time prior thereto, he was in the employ of Simon Hill, a contractor who did not belong to a contractors' organization. Hill had work to be done and desired to retain Carlson in his employ, and Carlson was able and willing to work and desired to continue his employment. Representatives of the union of which Carlson was a member had signed a working agreement with the Carpenter Contractors' Association, one of the defendants, which did not expire until 1921. This agreement provided, among other things, that there should be no strikes or lock-outs without the sanction of a joint conference board composed of members of the contracting parties, and that the minimum rate of wages until May 31, 1921, should be eighty cents an hour. Notwithstanding this agreement the representatives of the carpenters in June, 1919, presented to representatives of the contractors a demand that the minimum rate of wages be increased to one dollar an hour, giving as their reason the increased cost of living. Following this demand the contractors agreed to increase the wages twelve and one-half cents an hour but refused to grant the rate demanded. Thereupon, July 9, 1919, a general strike was called, in violation of the working agreement. Those contractors or members of the public who were willing to pay one dollar an hour to carpenters were allowed by the carpenters' union to proceed with their work without molestation. Hill agreed to pay Carlson one dollar an hour and Carlson continued in his employ. Oscar Carlson, plaintiff in No. 14777, was in July, 1919, engaged in erecting a building for himself. He is not a carpenter nor a carpenter contractor. After the strike was called he continued to employ union carpenters and paid them the wages demanded. A week after the strike was called the Car-

penter Contractors' Association and the Building Construction Employers' Association declared a lock-out of all union workmen in the building trades throughout Lake and Cook counties and the members of such contracting associations ceased operations. This lock-out had little, if any, effect on the situation, because all the union workmen had left the employ of the associated contractors before the lock-out was declared. After the associated contractors left the field, independent contractors who had been operating in Cook and Lake counties continued to employ union carpenters, and new contractors entered the field and employed the striking carpenters at the wage demanded. In order to make the lock-out effective the associated contractors sought and secured the aid of the dealers in building material. After several conferences the material dealers agreed, at the request of these contractors, who had theretofore been their best and largest customers, representing about eighty per cent of their business, to cease selling and delivering materials to any person employing or about to employ union carpenters or other union labor in the building trades. Thereafter independent contractors, private builders and members of the general public were refused material for the purpose of erecting or repairing buildings, and as a result of their inability to obtain building materials they were compelled to discharge workmen although willing to pay the wages demanded and to comply with all other requirements of the unions. As a result of the refusal of the material dealers to sell and deliver material Simon Hill was forced to discharge John Carlson and Oscar Carlson was not able to complete his building.

John Carlson filed a statement of claim in the municipal court against the unincorporated associations of employers, the officers and certain members of these associations and twenty-two dealers in building material, all of which defendants have their offices in the city of Chicago. After stating the facts substantially as we have stated them, he

alleged that the defendants did "unlawfully and maliciously enter into an agreement, combination and conspiracy to injure the employment of such [union] carpenters, including the plaintiff, and to boycott said carpenters, including the plaintiff, and in furtherance of such agreement, combination and conspiracy the defendants conspired to prevent, and did prevent, the sale of lumber and other building materials in said counties of Cook and Lake, Illinois, and particularly in the city of Chicago, to any and all persons employing or about to employ said carpenters, including the plaintiff; and said defendants, without any legal justification or excuse whatsoever, did specifically prevent the sale of lumber and other building material to the said Simon Hill, who was then and there employing plaintiff, for the express purpose of thereby compelling said Simon Hill to discharge the plaintiff and any other carpenters who might then be in the employ of Simon Hill," and that by reason of such conspiracy plaintiff was deprived of employment for a period of nine weeks. Oscar Carlson filed his statement of claim in the municipal court against the same defendants, and after a statement of the facts alleged that said defendants, "without any legal justification or excuse whatsoever, did prevent the sale of lumber and other building material to the plaintiff for the sole purpose of thereby preventing the plaintiff from giving employment to carpenters," and that by reason of such refusal to sell material he was deprived of the use of his building for two months. A trial was had before the court without a jury, and it denied damages to John Carlson and awarded damages in the amount of $340 to Oscar Carlson. On appeal to the Appellate Court for the First District the judgment against John Carlson was reversed and a judgment entered in his favor in the sum of $396. The judgment in favor of Oscar Carlson was affirmed. Certificates of importance were granted and these appeals prosecuted.

Propositions of law and of fact were submitted to the municipal court, and the court's action on these propositions shows that it found as an ultimate fact that the defendants formed their combination and refused to sell and deliver building materials to persons employing union carpenters and to permit building material to be sold and delivered in Chicago, for the purpose of maliciously injuring plaintiffs. The court denied damages to John Carlson because he was a member of the carpenters' union which violated its working agreement, thereby bringing about the condition which caused him to suffer. The Appellate Court found the facts the same as the municipal court, declaring that "defendants not only agreed to but did in fact succeed in establishing a boycott and blacklist against the striking carpenters;" and again, that "the defendants had the intention and the purpose, by the use of peaceful but notwithstanding powerful means, to compel the striking carpenters to accept less than one dollar an hour for their work. That was the primary and ultimate object to their plan." In reversing the judgment against John Carlson the Appellate Court held that the municipal court erred in applying the law, resting its decision upon the maxim that one wrong does not right another. The controverted question of fact as to whether the damage to plaintiffs was caused by the wrongful acts of defendants has been finally settled by the judgments of the Appellate Court. This court is limited to a review of the questions of law involved.

These are simple actions *ex delicto*. We are called upon to decide whether (1) a legal right of plaintiffs (2) has been invaded (3) by defendants (4) to the injury of plaintiffs. The right of employees to organize and to quit their employment singly or as a group; the right of employers to organize and to discharge their employees singly or to lock them out as a body; the right of dealers to organize and to refuse to sell merchandise to a particular individual, to a group of individuals or to the public at large; the pres-

ence of a few crooked business agents in the ranks of labor and of a few criminal profiteers in the ranks of employers and dealers; and the obligation of employers and employees to respect their working agreements, are all subjects full of interest but which have no bearing whatever on the issues involved in these cases and a discussion of any of the subjects would be entirely out of place.

Practically all of the briefs filed on behalf of defendants is devoted to a discussion of the primary purpose of defendants in agreeing to do and in doing the acts which they have done. They contend that their primary purpose was to force organized employees to respect their working agreements; to force the unions to prevent the crooked business agent from calling or threatening to call jurisdictional strikes for the purpose of extorting large sums of money from builders; to protect themselves from great losses because of the uncertainties occasioned by the practices of the unions and their officers, and to otherwise stabilize the building industry. Much of defendants' brief is devoted to a discussion of their rights and to the contention that in self-defense they were legally justified in doing what they did. Defendants' rights are not in any respect involved in this litigation and need not be considered except when necessary to a determination of plaintiffs' rights. The apparent confusion that exists in the law as declared in adjudicated cases in the different jurisdictions is due largely to a faulty mode of approach. Whenever a court permits itself to be led afield into a discussion of the rights of the defendant in tort actions and to become entangled in the subtleties connected with the phrases "primary purpose" and "legal justification," it is apt to have its attention diverted from a consideration of the question whether plaintiff's rights have been invaded by the doing of the act charged. To discuss the rights of the defendant is to confuse rather than clarify the issue. To argue that defendant had a legal right to do what it did and that plaintiff

cannot complain of the damage incidentally following the exercise of defendant's rights is to approach the question from the rear. Where A by close attention to business, by aggressive business methods and by offering better values takes customers from B and thereby damages B's business, B is not entitled to recover from A for the reason that he had no legal right to have a monopoly of the business in the territory and not for the reason that A had a right to enter the field. If A digs a well on his farm and thereby destroys a well on B's farm by intercepting the source of water, B cannot recover from A because he had no legal right to a continuance of the exclusive use of the source of water and not because A had the right to dig his well. The court should first determine whether plaintiff has a legal right which it is the duty of defendant to respect and then proceed from that point to determine the controversy. We shall therefore approach the consideration of this case from the standpoint of the plaintiffs.

The trial and Appellate Courts having determined the fact that the combination was formed and the acts pursuant thereto were done by the defendants for the purpose of maliciously injuring plaintiffs and that in carrying out this purpose they actually caused direct and immediate injury to each of them, the sole question for this court is whether plaintiffs are, under the law established in this State, entitled to recover. John Carlson has a right, under the law, as between himself and others, to full freedom in disposing of his own labor according to his own will. He had the right to contract with Simon Hill to work for an agreed wage and under agreed conditions. He was under no contractual relations with any of the defendants which limited this right. He had a right to receive for his services one dollar an hour or any other amount to which he and his employer could agree. Oscar Carlson had the right, under the law, to full freedom in investing his capital in the building which he was erecting and in employing any person free

305—22

to accept employment from him, at a wage and under conditions agreeable to them. He had the right to a free and open market in which to purchase materials with which to complete his building. These rights being clear, anyone who invades them without lawful cause or justification commits a legal wrong, and the wrong being followed by an injury in consequence thereof, plaintiffs have a right of action for such wrong. Damage inflicted by the use of intimidation, obstruction or molestation with malice is without excuse. The law seeks to protect every person against the wrongful acts of others, whether committed alone or by combination, and an action may be had for injuries done which cause another loss in the enjoyment of any right of privilege or property. No persons, individually or by combination, have the right to directly or indirectly interfere with or disturb another in his lawful business or occupation or for the sake of compelling him to do some act. which in his own judgment his own interest does not require. Losses willfully caused by another from motives of malice to one who seeks to exercise and enjoy the fruits and advantages of his own enterprise, industry, skill or credit will sustain an action. (*Doremus* v. *Hennessy,* 176 Ill. 608; *London Guarantee Co.* v. *Horn,* 206 id. 493; *O'Brien* v. *People,* 216 id. 354; *Purington* v. *Hinchliff,* 219 id. 159; *Gibson* v. *Fidelity and Casualty Co.* 232 id. 49; *Wilson* v. *Hey,* 232 id. 389.) In *Kemp* v. *Division No. 241,* 255 Ill. 213, three separate opinions were filed, and since less than a majority concurred in each opinion, the only question judicially determined in that case is that the demurrer to the bill of complaint filed was properly sustained by the circuit court, yet all of the judges agreed to the fundamental proposition of law held in the earlier decisions cited. There is no occasion for going outside this State for authority, because the law applicable to this case has been definitely settled by our own decisions.

The judgments of the Appellate Court are affirmed.

*Judgments affirmed.*