## WESTERN UNION TELEGRAPH CO. v. INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 134, et al.

(District Court, N. D. Illinois, E. D.   July 16, 1924.)

No. 4047.

**1. Injunction ⚖️101(2)—Trade union and employees may be enjoined from conspiracy to obstruct interstate commerce by compelling discharge of nonunion employees.**

Injunction will lie to restrain employees of telegraph company engaged in interstate business from conspiring to prevent plaintiff from performing its contracts by compelling it to discharge its employees who are not members of labor unions with which defendant employees are affiliated.

**2. Injunction ⚖️101(2)—Injunction lies to restrain boycott by trade union.**

Injunction will lie to restrain trade union and employees from boycotting a telegraph company, unless it discharges employees not members of labor union.

**3. Injunction ⚖️101(2)—Lawful persuasion of employees to cease work is unlawful, when result of conspiracy to interrupt commerce.**

Notwithstanding that it is legal for employees belonging to labor union to persuade other employees from working even in interstate commerce, such acts are unlawful when made pursuant to conspiracy to obstruct interstate commerce.

**4. Injunction ⚖️101(2)—Order restraining employees from conspiring to persuade other employees to cease work held not objectionable and not within Clayton Act.**

An order restraining employees and their union from inducing or persuading other employees from continuing in their employment in connection with interstate business or commerce is not objectionable as forbidding lawful acts, where it is limited only to acts done in furtherance of unlawful conspiracy to restrain interstate commerce, and such injunction is not forbidden by Clayton Act, § 20 (Comp. St. § 1243d).

**5. Constitutional law ⚖️83(2)—Injunction preventing conspiracy to cease work and induce others to quit held not to impose involuntary servitude.**

The right to cease work is no more absolute than any other right protected by Constitution, and injunction preventing employees from conspiring to obstruct interstate commerce by ceasing work and persuading other employees to cease work is not objectionable as imposing involuntary servitude upon defendants by preventing them from ceasing work at will; the order prohibiting only acts pursuant to unlawful conspiracy.

In Equity. Suit by the Western Union Telegraph Company against the International Brotherhood of Electrical Workers, Local Union No. 134, and others. On motion for temporary injunction. Motion granted.

West & Eckhart, of Chicago, Ill. (Wm. Rothmann and Wm. L. Bourland, both of Chicago, Ill., and Francis R. Stark, of New York City, of counsel), for complainant.

Hope Thompson and Timothy J. Fell, both of Chicago, Ill., for defendants.

2 F.(2d)—63

WILKERSON, District Judge. [1] The facts stated in the bill and supporting affidavits, in my opinion, show an interference with interstate commerce. They meet the test laid down by Chief Justice Taft speaking for the Supreme Court in United Mine Workers of America et al. v. Coronado Coal Co. et al., 259 U. S. 344, 408, 42 S. Ct. 570, 582 (66 L. Ed. 975, 27 A. L. R. 762). He said:

"We have had occasion to consider the principles governing the validity of congressional restraint of such indirect obstructions to interstate commerce in Swift & Co. v. United States, 196 U. S. 375; United States v. Patten, 226 U. S. 525; United States v. Ferger, 250 U. S. 199; Railroad Commission of Wisconsin v. Chicago, Burlington & Quincy R. R. Co., 257 U. S. 563; and Stafford v. Wallace, 258 U. S. 495. It is clear from these cases that, if Congress deems . certain recurring practices, though not really part of interstate commerce, likely to obstruct, restrain, or burden it, it has the power to subject them to national supervision and restraint. Again, it has the power to punish conspiracies in which such practices are part of the plan, to hinder, restrain, or monopolize interstate commerce. But in the latter case the intent to injure, obstruct, or restrain interstate commerce must appear as an obvious consequence of what is to be done, or be shown by direct evidence or other circumstances."

The plaintiff here is a public utility. A large part of its business is the transmission of messages. It is required to serve the public without discrimination. If the plaintiff is to perform its public duty, the instrumentalities for the transmission of the messages must be installed and maintained. If the purpose of the combination here shown to exist is carried out, the commerce itself is destroyed. The intent to restrain interstate commerce therefore appears as an obvious consequence of the acts of the defendants.

[2, 3] But, if it were held that the intent to obstruct interstate commerce is not established, a case for equitable relief against an unlawful boycott is made out, in my opinion, in view of the diversity of citizenship of the parties. Carlson v. Carpenter Contractors' Association, 305 Ill. 331, 338, 137 N. E. 222, 27 A. L. R. 625; Wilson v. Hey, 232 Ill. 49, 83 N. E. 928, 16 L. R. A. (N. S.) 85, 122 Am. St. Rep. 119, 13 Ann. Cas. 82; Franklin Union v. People, 220 Ill. 355, 376, 377, 77 N. E. 176, 4 L. R. A. (N. S.) 1001, 110 Am. St. Rep. 248; Chicago, Wil-

mington & Vermillion Coal Co. v. People, 214 Ill. 421, 73 N. E. 770.

The right of plaintiff to relief being sustained, we come to consider the scope of the injunction to be granted. In this connection it is to be considered that acts lawful in themselves may be a step in the execution of the plan of an unlawful or criminal conspiracy. In Aikens v. Wisconsin, 195 U. S. 194, 206, 25 S. Ct. 3, 6 (49 L. Ed. 154), it was said: ·

"No conduct has such an absolute privilege as to justify all possible schemes of which it may be a part. The most innocent and constitutionally protected of acts or omissions may be made a step in a criminal plot, and if it is a step in a plot neither its innocence nor the Constitution is sufficient to prevent the punishment of the plot by law."

In Hitchman Coal & Coke Co. v. Mitchell, 245 U. S. 229, 253, 38 S. Ct. 65, 73 (62 L. Ed. 260, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461), it was said:

"The cardinal error of defendants' position lies in the assumption that the right is so absolute that it may be exercised under any circumstances and without any qualification; whereas in truth, like other rights that exist in civilized society, it must always be exercised with reasonable regard for the conflicting rights of others."

And in Grenada Lumber Co. v. Mississippi, 217 U. S. 433, 440, 30 S. Ct. 535, 538 (54 L. Ed. 826), the Supreme Court said:

"That any one of the persons engaged in the retail lumber business might have made a fixed rule of conduct not to buy his stock from a producer or wholesaler who should sell to consumers in competition with himself is plain. No law which would infringe his freedom of contract in that particular would stand. But when the plaintiffs in error combine and agree that no one of them will trade with any producer or wholesaler who shall sell to a consumer within the trade range of any of them, quite another case is presented. An act harmless when done by one may become a public wrong when done by many acting in concert, for it then takes on the form of a conspiracy, and may be prohibited or punished, if the result be hurtful to the public or to the individual against whom the concerted action is directed. Callan v. Wilson, 127 U. S. 555, 556."

[4] Objection is made to the fifth clause of the prayer for a temporary injunction on the ground that acts of persuasion are forbidden. The clause in question, however, is expressly limited to inducing or persuad-

ing the employees of plaintiff to refuse or fail to perform any of their duties as such employees in connection with interstate business or commerce of said company or the transmission of messages of the government of the United States or the officials thereof. It applies only to acts which are done in furtherance of the unlawful conspiracy to restrain interstate commerce. Defendants are forbidden to induce or persuade plaintiff's employees to refuse or fail to perform any of their duties as such employees in connection with a service which it is the duty of the plaintiff to render. The duties, interference with which is prohibited, are therefore essentially public duties. Clause 5, in my opinion, is not covered by section 20 of the Clayton Act (Comp. St. § 1243d), and does not come within the reasoning in American Foundries v. Tri-City Council, 257 U. S. 184, 42 S. Ct. 72, 66 L. Ed. 189, 27 A. L. R. 360. It does not forbid defendants from persuading the employees of the Western Union Telegraph Company to terminate the relation of employment. It prohibits interference with the performance by plaintiff's employees of their duties while they continue to be employees of the plaintiff. And, as pointed out, those duties relate to a service which plaintiff is under obligation to the public to render.

[5] As to clause 1 of the prayer for a temporary injunction it is said that it prevents employees from ceasing to work, and therefore imposes involuntary servitude upon them. The right to cease work is no more an absolute right than is any other right protected by the Constitution. Broadly speaking, of course, one has the right to work for whom he will, to cease work when he wishes, and to be answerable to no one unless he has been guilty of a breach of contract. But the cessation of work may be an affirmative step in an unlawful plan. One may not accept employment intending thereby to quit work when that act will enable him to perform one step in a criminal conspiracy. The real wrong is the acceptance of the employment, with intent to make use of it for a criminal purpose. These defendants are under no compulsion to accept employment on buildings where plaintiff's equipment is being installed; and, if they do accept it, they are not permitted to make an unlawful use of it. The language of this clause, however, should be so changed that there will be no opportunity for mistake or misrepresentation as to its true meaning. The acts enjoined should be expressly limited to acts done in furtherance

of the conspiracy charged in the bill. This may be accomplished by adding the following:

"And thereby of preventing said plaintiff from performing its contracts with its customers and of compelling it to discharge its employees who are not members of labor unions which are affiliated with said defendants."

That no excuse for misrepresenting the true scope of this injunction may remain, the following should be added:

"Nothing herein shall be construed to prohibit any employee from voluntarily ceasing work unless said act is in furtherance of the conspiracy charged in the bill herein to prevent plaintiff from performing its contracts with its customers and to compel plaintiff to discharge employees who are not members of labor unions which are affiliated with said defendants."

An order in accordance with the above views may be drafted by counsel for plaintiff, and will be entered upon notice.