## BUDINSKY v UNIVERSAL CARLOADING & DISTRIBUTING CO

Ohio Appeals, 8th Dist, Cuyahoga Co

No 15711.   Decided Feb 15, 1937

Gabriel Leeb, Cleveland, and Henry Lavine, Cleveland, for plaintiff-appellee.

J. W. Kennedy, Cleveland, Orgill, Maschke & Wickham, Cleveland, and James Mathews, Cleveland, for defendant-appellant.

### OPINION

By TERRELL, J.

This case is here for review of a judgment in favor of plaintiff for $1000.00 damages. Plaintiff's claim for damages was based upon the allegation that as a result of defendant's actions in a conspiracy, his employment with defendant was terminated; he was prevented from continuing in his employment with defendant; that he has been deprived of the benefits under a contract of defendant and the

association of workmen of which he was a member, and that defendant did further maliciously and unlawfully refuse to employ him as long as he would continue to be affiliated with said association of workmen.

Plaintiff was employed by defendant at a rate of pay of fifty-two and a half cents an hour, with the understanding that if he was called to work any day he would be given at least four hours work or paid for four hours. Plaintiff was a member of an association of workmen engaged in similar work. Said association had a working agreement with defendant for the benefit of its members providing for working conditions, hours for lunch, "seniority rights" so-called, and some provision for arbitration of disputes between said employer and employees. Nowhere in plaintiff's contract of employment or in the agreement with the association is there any definite tenure of employment provided. Plaintiff was thus left free at any time to cease the employment without breach of any contract as likewise were all the members of said association who were employees of defendant free to cease employment without breach of contract. The men could go on "strike" at any time with or without cause. Plaintiff had been an employee of defendant for several years. Several months before the happening of the events which are the subject of this law suit, plaintiff and his associates had gone out on "strike" and returned to work only after the new arrangement above set forth had been made with the workmen's association. This workmen's association attempted to broaden its sphere and take in new members in other cities. This endeavor brought it in competition and conflict with another labor organization. A leader, named Murphy, of this other organization thereupon endeavored to get the employees of defendant to leave their association and join his labor organization. His endeavors in that respect became very pronounced and forceful. With the assistance of one hundred of his men he came to defendant's place of business and with great show of force and power, and the use of intimidations and force practically drove plaintiff and his associates from the employment. Plaintiff charges that thereupon defendant did not try to drive Murphy and his organization away but told plaintiff and his associates that unless they joined Murphy's organization they could not work for defendant. Plaintiff was paid for his work up to this time, and reported for work for ten days subse-

quent but did no work. He thereupon sued defendant for $21.00 being for four hours a day for ten days at fifty two and a half cents per hour. Judgment was obtained against defendant for $21.00, which was paid.

Plaintiff thereupon brought this present suit, claiming that this defendant company, together with Murphy and Gray and Ravietta, the Manager and Superintendent respectively of the company, had united in an unlawful conspiracy to cause him to lose his job and suffer damages as hereinbefore set forth.

The record of the evidence contains over 600 pages and sets forth in minute detail the history of various tranportation and trucking companies and their endeavors to get business and produce the maximum profit, and it also sets forth the endeavors of contending labor groups to organize the workmen into their respective unions. A great amount of this record contains matter irrelevant to the issues in this case.

The verdict of the jury stated specifically that no punitive damages were included. It follows that only compensatory damages were contained in the verdict.

If there was any liability to plaintiff there is no evidence to sustain a verdict of $1000.00. Indeed there is no evidence to show any actual damages.

Plaintiff was engaged in the employment from day to day with no tenure except that he had to be paid for four hours if he was required to and did report for work. He had no legal right to demand that the employer would keep him in employment. There was, therefore, no so-called property right in the continuance of said employment. The employer could have terminated the employment at any time. There was no legal duty on the employer to keep him in the employment. Therefore, there was no legal damage suffered by him because of the loss of his job and termination thereof by the employer. So far as the employer is concerned, plaintiff's claim is damnum absque injuria.

The case otherwise presents an interesting question of law. Can an employer be guilty of conspiracy to discharge his own employee and thereby held for civil damages? The answer to this question is simple. For any legal damage unlawfully caused to another, the law provides a redress.

We have examined the cases cited by plaintiff, wherein he seeks to show a liability on the employer who by an unlawful conspiracy brought about the discharge of

plaintiff. A study of these cases will show their inapplicability to the facts claimed by plaintiff to exist in this case.

Thus, plaintiff cites Central Metal Products Co. v O'Brien, 276 Federal 827, wherein plaintiff had a contract with the City of Cleveland to install certain metal work at City Hospital which he proceeded to do through his employees who were carpenters. O'Brien, associated with the metal workers, demanded of the city architect and Director of Welfare that they cause the carpenters to be discharged and union metal workers employed in their stead, and if this was not done he threatened to call a "strike" of metal workers on other city jobs. Thereupon the architect and Welfare Director ordered plaintiff to discontinue further work and excluded plaintiff's employees from the premises. Action for injunction was brought, claiming that O'Brien, the City Architect and the Welfare Director were in conspiracy to deprive plaintiff of its property and to injure its business. The court held for plaintiff.

The plaintiff in this case just cited, had a lawful contract with the city out of which grew certain legal rights—property rights not terminable at will. Third parties, O'Brien, the City Architect and the Welfare Director, without the authority of the city, endeavored to unlawfully interfere with plaintiff's legal rights under the contract. Plaintiff had a legal right as against the interference of these third parties to continue in the performance of its contract with the city.

But in the case at bar, as between the employer and the plaintiff employee, plaintiff had no legal right to continue in the employment and hence was not damaged by the termination thereof.

The case of Motley Green Company v Detroit Steel Company, 161 Federal, 389, is also cited. Therein the court said:

"Now if one of the contracting parties devises a scheme to avoid his contract and escape performance, and, perhaps liability, by combining and confederating with a third person to pretend to transfer to him his property and the business to which the contract relates, making known to such third person his contract obligations and his object and purpose, such third person to pretend to be the owner and to have the possession of and the management of the business and refuse to give employment or business to the other contracting party pursuant to the contract and deprive him of gains, profits and advantages already partially earned and prevent his full performance so as to deprive him of what he is entitled to, and such third party entered into and becomes a party to the scheme and for a consideration aids to carry it into full effect to the damage of the other party to the contract, can it be said that here is not a conspiracy to commit a wrong by deception and wrongful acts and that it has been consummated by the joint action of both parties?"

In this Motley Green case one of the contracting parties conspired with a third party by fraud and deception to cheat the other party out of his property "gains already partially earned" and to which he had a legal right. In the case at bar, the alleged conspiracy was to deprive plaintiff of his job in which he had no legal right to continue.

2 Addison on Torts, page 739, is cited by the plaintiff, in which the plaintiff quotes the author as saying:

"Suppose that an employer of an actor desiring to drive him out of his employment and cause him to abandon and refuse to perform his contract, had invited these parties to come to his theater and hoot and hiss the actor without justifiable cause, and they had done so and prevented him from acting, would not the action have been sustained against all, including the employer? Would it have been a defense to the employer to say that he was the employer and had only broken his contract and must be sued on the contract for breach thereof?"

We would join in with plaintiff in the case at bar and the author of 2 Addison on Torts in the answer that is plain, that by reason of such conspiracy the actor was grievously wronged in his contract rights and reputation as an actor and should be entitled to redress from all those who partook in the conspiracy including the employer. But, in the case at bar, plaintiff was not wronged in his contract or reputation or otherwise, which was cognizable at law.

In 2 Addison on Torts, 739 and 740, the author says:

"A criminal proceeding by way of indictment lies for the mere act of conspiring but a civil action is not maintainable unless the plaintiff has been aggrieved or has sustained 'actual legal damage' by some overt act done in pursuance of the conspiracy."

In the case at bar there has been no actual legal damage sustained by plaintiff.

Plaintiff cites the case of Carlson v Carpenters Association, 305 Ill. 331, 27 A.L.R. 625, which was a conspiracy case to prevent the employment of labor, wherein the court states:

"The court should first determine whether plaintiff has the legal right which it is the duty of defendant to respect, and then proceed from that point to determine the controversy."

In the case at bar, however, plaintiff has no legal right to continue in the employ of defendant, which defendant is legally bound to respect. This case is inapplicable to the facts of the case at bar.

An appropriate illustration is given by the court in the Carlson case:

"If A digs a well on his farm, and thereby destroys a well on B's farm, by intercepting the source of water, B cannot recover from A, because he had no legal right to the continuance of the exclusive use of the source of water, and not because A had the right to dig his well."

In the case at bar, the employee, plaintiff, had no right to a continuation of the employment that the employer was legally bound to respect, and the employee cannot recover because there was no interference with his right.

There has been cited by defendant, the case of Lambert v Georgia Power Company et al, decided by the Supreme Court of Georgia, February 10, 1936, wherein Lambert, an employee of the power company sued the power company and the street car union, charging conspiracy to effect his discharge. The syllabus reads as follows:

"An employee under a contract of hiring, indefinite in its duration, may lawfully be discharged at the will of his employer. A discharge under such circumstances affords no cause of action for breach of contract. A conspiracy although wrongful in motive, to effect what one has a legal right to accomplish, is not actionable.

Granting that the allegations of plaintiff are sufficient to sustain the conclusion of conspiracy, there would be no actionable conspiracy growing out of the exercise in a lawful manner, of the legal right to discharge plaintiff."

The foregoing Lambert case is exactly in point upon the facts and issues in the case before us. It clearly expresses the conclusion we have already reached.

In the illustration of the farmer digging a well on his farm and interfering with the flow of water to his neighbor's well, there was no liability. Would there be a liability if it had been shown that the farmer had conspired with a third party and both being inspired with ulterior motives and malice had dug the well, knowing that it would stop the flow of water to his neighbor's well? We think not because no right was violated.

In the Lambert case, the court further says:

"The averment of a conspiracy does not ordinarily change the nature of the action nor add to its legal force or effect. The gist of the action is not the conspiracy alleged, but the tort committed against the plaintiff and the damage thereby done wrongfully. Where damage results from an act which, if done by one alone, would not afford ground of action, the like act would not be rendered actionable because done by several in pursuance of a conspiracy."

We thus come to the conclusion that under the law, if there was a conspiracy to cause the employer to discharge the employee in this case, there would be no liability on the employer, as no right of the employee was violated.

Our consideration of the evidence in this case leads us to the conclusion that there was no evidence of any unlawful conspiracy to damage the plaintiff. The main actor who bears any approbrium of guilt in this case, if there be such, is one Murphy, who was voluntarily dismissed from the case by plaintiff.

This opinion has been apparently unduly drawn out. In excuse therefor it may be borne in mind that the record was over 600 pages, plaintiff's printed brief was over 100 pages and defendant's printed brief nearly 50 pages. Plaintiff's counsel were very earnest in the presentation of this case. We are informed that approximately seventy other cases similar to this are still pending disposition. The writer therefore deemed it appropriate to carefully set forth the reasons for our conclusions on the various points of law involved.

It is our conclusion that the judgment of the trial court should be reversed for

failure to direct a verdict for defendant, at the close of plaintiff's evidence.

Final judgment will be entered for defendant.

LEVINE, PJ, and LIEGHLEY, J, concur in judgment.